| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 4:06-CR-311 |
| | § | |
| RANDY TYRICE SHAW | § | |

## MEMORANDUM AND ORDER

Pending before the court are Defendant Randy Tyrice Shaw's ("Shaw") *pro se* Motion for Compassionate Release ("First Motion") (#54) and *pro se* Motion to Amend Sentence Reduction Motion Under 18 U.S.C. § 3582(c)(1)(A) ("Motion to Amend") (#58). Shaw seeks compassionate release due to the Coronavirus Disease 2019 ("COVID-19"). United States Pretrial and Probation Services ("Probation") conducted an investigation and recommends that the court deny Shaw's request for compassionate release. The Government filed a Response (#57) in opposition. Having considered the pending motions, Probation's recommendation, the Government's Response, the record, and the applicable law, the court is of the opinion that the First Motion should be denied and that the Motion to Amend should be denied as moot.

I.   Background

On December 14, 2006, the United States Grand Jury for the Eastern District of Texas returned a one-count Indictment charging Shaw with Possession with Intent to Distribute and Dispense Cocaine Base, in violation of 21 U.S.C. § 841(a)(1). On February 15, 2007, pursuant to a non-binding plea agreement, Shaw pleaded guilty to the sole count of the Indictment. Shaw admitted that he was responsible for at least 50 grams but less than 150 grams of cocaine base. On June 11, 2007, Shaw was sentenced to 320 months' imprisonment, followed by a 5-year term of supervised release. On July 8, 2019, the court granted Shaw's *pro se* Motion for Sentence

Reduction Pursuant to the First Step Act of 2018 and reduced his sentence of imprisonment from 320 to 230 months, followed by a 4-year term of supervised release. Shaw is currently housed at USP Florence - High ("Florence High"), located in Fremont County, Colorado, and his projected release date is March 30, 2024. Shaw requests that the court reduce his sentence to time served and add a condition of home confinement at the outset of his term of supervised release. The Government asserts that Shaw's First Motion is premature because he has not exhausted his administrative remedies. The Government also contends that Shaw does not establish extraordinary and compelling reasons for compassionate release. Shaw subsequently filed his Motion to Amend, asserting that he submitted a request for compassionate release to the warden on April 1, 2020, and that he has hypertension and prediabetes. The court will construe the Motion to Amend as a reply to the Government's Response.

II.   Analysis

On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a

> determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582(c) by providing a defendant with the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait

for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Alam*, 2020 WL 2845694, at *2; *Raia*, 954 F.3d at 597.

According to Shaw, he submitted a request for compassionate release to the warden of Florence High on April 1, 2020, and the warden denied his request on April 16, 2020. Shaw asserts that the warden ignored his request for compassionate release and instead considered him for home confinement. Thus, it appears that at least 30 days passed before Shaw filed the First Motion. Nevertheless, even if Shaw complied with the exhaustion requirement, nothing in the record demonstrates that extraordinary and compelling reasons exist to reduce his sentence.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission has defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18

U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

In his Motion to Amend, Shaw contends for the first time that he has hypertension and prediabetes, medical conditions that allegedly increase his risk of complications from COVID-19. Shaw, however, provides no supporting documentation to establish his claimed medical conditions. The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* § 1B1.13 cmt. n.1(A). Shaw's medical summary does not meet the criteria listed above. He does not contend that either of his reported medical conditions is terminal or substantially diminishes his ability to

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

provide self-care. Hence, Shaw has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence.

Therefore, Shaw's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *9 (M.D.N.C. June 28, 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination that extraordinary and compelling reasons exist with respect to Shaw for any reason. In exercising its discretion, the court likewise finds that no extraordinary and compelling reasons exist in relation to Shaw's situation. As of June 23, 2020, the BOP reports that no inmates among the 715 inmates housed at Florence High have tested positive for COVID-19. Shaw maintains that if he contracts

COVID-19, it will be fatal for him due to prison overcrowding and there being no way to distance himself from other inmates. Although Shaw, age 41, expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Shaw, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").

Shaw attaches to his motion a document entitled Motion for Compassionate Release (#54-1) filed by another inmate, Tony Powell ("Powell"), and attempts to incorporate Powell's arguments that extraordinary and compelling reasons exist for his release. The court notes that Powell indicates in his motion that he is 58 years old, with diabetes and other health complications that confine him to a wheelchair. Powell's Motion for Compassionate Release was dismissed without

prejudice for failure to exhaust administrative remedies. Order Granting Mot. to Dismiss at 2, *United States v. Powell*, Cause No. W-95-CR-004-ADA (W.D. Tex. May 31, 2020). Here, in contrast, Shaw is 41 years old and is without comparable, documented health conditions. Probation reports that Shaw "does not appear to have a compelling medical condition for release at this time." At the time of his conviction, Shaw's Presentence Investigation Report ("PSR") indicated that he was not under the care of a physician and was not taking any medications, although he was smoking both marijuana and phencyclidine ("PCP") on a daily basis. Shaw's reliance on Powell's arguments fails to support the existence of extraordinary and compelling reasons for a sentence reduction for Shaw.

Shaw has failed to establish that other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence to time served. In addition, Shaw's PSR reveals that he was classified as a career offender, was assessed 20 criminal history points, and has an extensive criminal record, which includes prior convictions for Aggravated Assault with a Deadly Weapon (3), Deadly Conduct — Discharge of Firearm, Assault Causing Bodily Injury, Riot Participation, Evading Arrest and Detention (2), and Unlawfully Carrying a Weapon. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release). As noted by Probation, "[t]his violent criminal past is concerning and suggests a heightened risk to the community." As a consequence, the court cannot conclude that Shaw would not pose a danger to any other person or to the community, if released.

The BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020,

the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020). The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. To date, the BOP has placed 4,413 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid

9

exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)). Here, Shaw's track record is similarly a poor one.

In short, Shaw has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See Koons*, 2020 WL 1940570, at *4-5 (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Id.*

III. <u>Conclusion</u>

Consistent with the foregoing analysis, Shaw's First Motion (#54) is DENIED, and his Motion to Amend (#58) is DENIED AS MOOT.

SIGNED at Beaumont, Texas, this 24th day of June, 2020.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE